## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **WIRELESSWERX IP, LLC,**<br>**Plaintiff,**<br><br>v.<br><br>**SAMSUNG ELECTRONICS**<br>**AMERICA, INC.,**<br>**Defendant.** | **Civil Action No. 7:25-cv-00007**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, WirelessWerx IP, LLC ("WirelessWerx" or "Plaintiff"), files this Original Complaint for Patent Infringement against Samsung Electronics America, Inc. ("Samsung USA" or "Defendant"), and would respectfully show the Court as follows:

### PARTIES

1.      Plaintiff is a Texas limited liability company having an address located at 5900 Balcones Dr., Suite 100, Austin, Texas 78731.

2.      On information and belief, Defendant is a corporation organized and existing under the laws of Delaware.  Defendant has a regular and established place of business at 12100 Samsung Blvd., Austin, TX 78754.  Defendant can be served through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19808, at its place of business, or anywhere else it may be found.

3.      On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

1

## JURISDICTION

4.      This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Accused Products in the United States. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

5.      This United States District Court for the Western District of Texas has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within this District giving rise to this action and are present in and transact and conduct business in and with residents of this District and the State of Texas.

6.      Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

7.      Defendant has committed acts of infringing the Patent-in-Suit within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products claimed by the Patent-in-Suit, including without limitation products made by practicing the claimed methods of the Patent-in-Suit. Defendant, directly and through intermediaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

8.      Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and

within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District. This Court has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Western District of Texas that Defendant knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendant has regular and established places of business throughout this District, including at least at 12100 Samsung Blvd, Austin, TX 78754, and directly and through agents regularly does, solicits, and transacts business in the Eastern District of Texas. Also, Defendant has hired and is hiring within this District for positions that, on information and belief, relate to infringement of the Patent-in-Suit. Accordingly, this Court's jurisdiction over the Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendant's purposeful minimum contacts with the State of Texas.

9.    This Court also has personal jurisdiction over Defendant, because in addition to Defendant's online website and advertising within this District, Defendant has also made its products available within this judicial district and advertised to residents within the district to hire employees to be located in this District.

10.    The amount in controversy exceeds $75,000 exclusive of interests and costs.

11.    Venue is proper in this Court under 28 U.S.C. § 1400(b) based on information set forth herein, which is hereby repeated and incorporated by reference. Further, upon information and belief, Defendant has committed or induced acts of infringement, and/or advertise, market, sell, and/or offer to sell products, including infringing products, in this District. In addition, and

without limitation, Defendant has regular and established places of business throughout this District, including at least at 12100 Samsung Blvd, Austin, TX 78754.

## THE PATENT-IN-SUIT

12.  On January 8, 2008, U.S. Patent No. 7,317,927, entitled "Method and System to Monitor Persons Utilizing Wireless Media" was duly and legally issued by the U.S. Patent and Trademark Office.  Wireless Werx owns the '927 patent by assignment.  The '927 patent relates to a novel and improved methods and systems of selectively communicating with a first portable device within pre-defined geographical zones that enables communication between the first portable device and a second portable device upon the occurrence of an event.[1]  The priority date for the '927 patent is November 5, 2004.[2]

13.  Embodiments of the claimed invention provide numerous benefits over the prior art related to portable wireless device ("PDA") exception based information and reporting for wireless device tracking.[3]  The patent specification provides that such PDA exception based information and reporting was not possible prior to the claimed invention, requiring users to constantly track information and location of devices.[4] Further, embodiments of the invention using a PDA with exception based reporting can monitor environmental parameters and conditions surrounding the person carrying the PDA.[5]  Further embodiments provide a PDA with event-based reporting to execute a pre-configured operation upon the occurrence of an event (exception).[6]

Claim 2 is representative and provides:

---

[1] Doc. No. 1-1, U.S. Patent No. 7,317,927 ("the '927 patent") at Abstract and Column 1, lines 20-25 ("1:20-25").
[2] *See id.* at Filing date of provisional application 60/625,467 (60).
[3] *See id.* at 1:43-51.
[4] *See id.* at 1:52-63.
[5] *See id.* at 1:56-59.
[6] *See id.* at 2:29-35; Claim 2.

1. A method of selectively communicating with a first portable device within pre-defined geographical zones, comprising:

defining a geographical zone utilizing latitude and longitude attributes;

loading data representative of the geographical zone to the first portable device, wherein the data representative of the geographical zone includes the latitude and longitude attributes mapped to corresponding pixels in a pixilated computer image of the geographical zone stored in the first portable device;

providing the first portable device with a ground positioning unit receiver, the ground positioning unit receiver permitting the first portable device to obtain geographical coordinates of the position of the first portable device;

configuring the first portable device to determine the location of the first portable device in relation to the pixilated computer image of the geographical zone by determining a relative position of the geographical coordinates and the pixel data representative of the geographical zone;

programming a microprocessor in the first portable device to determine the occurrence of an event related to a status of the portable device in relation to the geographical zone; and

permitting the microprocessor in the first portable device to transmit an event message indicating the occurrence of the event to a second portable device.[7]

2. The method of claim 1, further comprising permitting at least one of a plurality of devices to transmit a signal to the first portable device indicating the occurrence of the event; and

permitting a microprocessor in the first portable device to execute a preconfigured operation if the microprocessor in the first portable device determines that the event occurred triggers the execution of the preconfigured operation.[8]

---

[7] Doc. No. 1-1 at 31:49-32:11.
[8] Doc. No. 1-1 at 32:12-20.

16.     The claims depending from Claim 1[9] add further material important to patentability.[10]

17.     The judicial exclusions for patentable subject matter are limited to (1) laws of nature, (2) natural phenomena, and (3) abstract ideas.[11] The claims of the '927 patent are not so directed.  The claims of the '927 patent claim a method of selectively communicating with a first portable device within pre-defined geographical zones, i.e., as described in the specification as PDA exception-based information and reporting,[12] with claim 2 executing an operation upon the occurrence of an event.[13]  The claims are clearly not a law of nature or a natural phenomenon.  Likewise, the claims are not directed to an abstract idea as the Federal Circuit has identified various types of abstract ideas, and while there is "no single, hard-and-fast rule that automatically outputs an answer in all contexts exists because there are different types of abstract ideas, including (1) methods of organizing human activity, such as fundamental economic practices [citation omitted]; (2) claims to mental processes, even if performed on a computer rather than in the human mind [citation omitted]; and (3) claims to results rather than to a means of achieving the claimed result [citation omitted]."[14]  Here the claims are not directed to a method of organizing human activity or a mental process performed on a computer or a means of achieving a claimed result without describing how to achieve the result.  Here, there are concrete meaningful steps that show an inventive step.[15]

---

[9] And the remaining dependent claims.
[10] *See* Doc. No. 1-1 at 32:12-34:17 (Claims 2-16).
[11] *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014).
[12] Doc. No. 1-1 at 1:43-51.
[13] Doc. No. 1-1 at 32:12-20.
[14] *In re Killian*, 45 F.4th 1373, 1381–82 (Fed. Cir. 2022), *cert. denied sub nom. Killian v. Vidal*, 144 S. Ct. 100, 217 L. Ed. 2d 26 (2023), *reh'g denied*, 144 S. Ct. 441, 217 L. Ed. 2d 245 (2023).
[15] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–51 (Fed. Cir. 2016).

## IV.    THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

18.    The Claims of the '927 patent are directed to improvements in PDA event (exception) based information and reporting for wireless device tracking.[16]    The '927 patent's specification teaches the claimed solution for wireless device tracking was not available prior to the invention of the claims of the '927 patent.[17]  Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '927 patent and thus there is no record evidence that refutes the patent specification specific allegations which therefore must be taken as true.

19.    To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[18]  a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[19]  In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[20]  Taking the claim as a whole, the focus of the claims is "PDA exception based information and location reporting for wireless device tracking."[21] ("Focus").

This Focus is supported by the Abstract:

---

[16] Doc. No. 1-1 at 1:43-51.
[17] *See id.* at 1:43-51.
[18] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.
[19] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[20] *See e.g., Alice Corp.*, 574 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).
[21] Doc. No. 1-1 at Doc. No. 1-1 at 1:43-51, Abstract and Claims, *generally*.

A method and system of selectively communicating with a first portable device within pre-defined geographical zones is disclosed. The first portable device is associated with a geographical zone defined utilizing latitude and longitude attributes. Data representative of the geographical zone is then loaded on the first portable device. The first portable device includes a ground positioning unit receiver which allows the first portable device to receive positioning data and to determine its position in relation to the geographical zone. When the first portable device determines it is within the geographical zone, the first portable device enables communication between the first portable device and a second portable device.

22

20.    Assessing the focus of the claims from the Abstract is proper as the directed to inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.

Further support for this Focus is provided in Claim 2:

1. A method of selectively communicating with a first portable device within pre-defined geographical zones, comprising:

…

loading data representative of the geographical zone to the first portable device, wherein the data representative of the geographical zone includes the latitude and longitude attributes mapped to corresponding pixels in a pixilated computer image of the geographical zone stored in the first portable device;

…

configuring the first portable device to determine the location of the first portable device in relation to the pixilated computer image of the geographical zone by determining a relative position of the geographical coordinates and the pixel data representative of the geographical zone;

---

22 Doc. No. 1-1 at Doc. No. 1-1 at 1:43-51, Abstract.

programming a microprocessor in the first portable device to determine the occurrence of an event related to a status of the portable device in relation to the geographical zone; and

permitting the microprocessor in the first portable device to transmit an event message indicating the occurrence of the event to a second portable device.[23]

2. The method of claim 1, further comprising permitting at least one of a plurality of devices to transmit a signal to the first portable device indicating the occurrence of the event; and

permitting a microprocessor in the first portable device to execute a preconfigured operation if the microprocessor in the first portable device determines that the event occurred triggers the execution of the preconfigured operation.[24]

The preamble, which breathes life into the invention, is therefore limiting. Here, antecedent basis is provided for the term "a first portable device" (and other terms) in the preamble.

As well, the specification of the '927 patent provides further support for the Focus in the Summary which specifies that:

---

[23] Doc. No. 1-1 at 31:49-32:11.
[24] Doc. No. 1-1 at 32:12-20.

> In one aspect, there is a method of selectively communicating with a first portable device within pre-defined geographical zones. A geographical zone is defined utilizing pre-determined attributes. Data representative of the geographical zone is loaded to the first portable device. The first portable device is provided with a ground positioning unit receiver, the ground positioning unit receiver permitting the first portable device obtain geographical coordinates of the position of the first portable device. The first portable device is configured to determine its location relation to the geographical zone. The microprocessor in the first portable device is programmed to determine the occurrence of an event related to status of the portable device in relation to the geographical zone. Finally, the microprocessor in the first portable device is configured to transmit an event message indicating the occurrence of the event to the second portable device.
>
> The method can further comprise permitting the plurality of devices to transmit a signal to the first portable device indicating the occurrence of the event; and permitting a microprocessor in the first portable device to execute a preconfigured operation if the microprocessor in the first portable device determines that the event occurred triggers the execution of the preconfigured operation.[25]

The specification further describes the prior art as containing PDA that continuously track.[26]  As such, the focus is limited to event (exception) based information and reporting and does not relate in any manner to a traditional, continuous tracking.  The problem is a problem specific to PDA device tracking, namely allowing a user to track a first PDA when an event (exception) is met, such as when a vehicle leaves a predetermined area.[27]

21.     Claim 2 of the '927 patent and the specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete.[28]  For instance, the '927 patent provides claim limitations on how the PDA exception based information is reported.   First, a geographical zone is defined utilizing latitude and

---

[25] Doc. No. 1-1 at 2:12-35.
[26] Doc. No. 1-1 at 1:52-55.
[27] Doc. No. 1-1 at 6:14-33.
[28] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

longitude attributes.[29]   Then, data representative of the geographical zone is loaded to the first portable device where the latitude and longitude attributes are mapped to corresponding pixels in a pixilated computer image on the portable device.[30]   Next, the PDA's ground positioning unit receiver obtains geographical coordinates of the position of the first portable device.[31]   Then, the first portable device determines the location of the first portable device in relation to the pixilated computer image of the geographical zone by determining a relative position of the geographical coordinates and the pixel data representative of the geographical zone.[32]   Wherein a programed microprocessor in the first portable device determines the occurrence of an event (exception) related to a status of the portable device in relation to the geographical zone.[33]   Wherein the event (exception) occurrence allows the transmission of an event message indicating the occurrence of the event to a second portable device (second PDA).[34]   In short, the claimed method is very detailed on how the event (exception) based communication occurs between a first PDA and a second PDA thus defining concrete steps that render the claims patentable.[35]   Further, Claim 2 allows the execution of a preconfigured operation upon the occurrence of the event (exception).[36]

22.    The '927 patent's specification provides figures that disclose various embodiments of the invention.  For example, FIG. 1 illustrates the high-level architecture of a computer system and a PDA for monitoring and communicating with persons.  In short, there is ample disclosure of how to implement embodiments of the claimed invention and clearly a result alone is not claimed.

---

[29] Doc. 1-1 at 31:52-53.
[30] Doc. 1-1 at 31:54-59.
[31] Doc. 1-1 at 31:60-64.
[32] Doc. No. 1-1 at 31:65-32:3.
[33] Doc. No. 1-1 at 32:4-8.
[34] Doc. No. 1-1 at 32:9-11.
[35] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350–51 (Fed. Cir. 2016).
[36] Doc. No. 1-1 at 32:12-20.

23.     The specification of the '927 patent teaches that the solution of PDA exception based information and location reporting for wireless device tracking was not available before the invention.[37]

24.     The present claims are directed to a problem unique to wireless device tracking. The solution it provides, "PDA event (exception) based information and location reporting for wireless device tracking"[38]  Stated another way, the present claims allow reporting of device location upon the occurrence of an event where it would otherwise be continuous reporting thus are patent eligible.[39]

25.     The claims here are directed as a whole to a problem unique to wireless device tracking[40]  Traditionally users were required to continuously track wireless devices.   Thus, here the claimed invention "overrides conventional practice."[41]   Further, the specification provides concrete examples of how to practice the claims tethering the solution "to the technology that created the problem."  Thus, the claims of the '927 patent therefore, when "taken together as an ordered combination, ... recite an invention that is not merely the routine or conventional," namely allowing a user to track a first PDA when an event (exception) is met.[42]  The claims do not try to pre-empt every use of wireless device tracking, but rather recite a specific way to track a PDA when an event (exception) is met thus claiming additional features that render the claims patent eligible.[43]

---

[37] See id. at 1:52-55.
[38] Doc. No. 1-1 at 1:52-63, Abstract and Claims, generally.
[39] See id.
[40] See id. at 1:52-55, Abstract and Claims, generally.
[41] Messaging Gateway Solutions, LLC v. Amdocs, Inc., No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *15 (D. Del. Apr. 15, 2015).
[42] Doc. No. 1-1 at 6:14-33.
[43] See, e.g., DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1259 (Fed. Cir. 2014).

26.    The '927 patent's claims include additional features important to patentability such as: (1) a geographical zone is defined utilizing latitude and longitude attributes.[44]  (2) data representative of the geographical zone is loaded to the first portable device where the latitude and longitude attributes are mapped to corresponding pixels in a pixilated computer image on the portable device.[45]   (3) the PDA's ground positioning unit receiver obtains geographical coordinates of the position of the first portable device.[46]  (4) the first portable device determines the location of the first portable device in relation to the pixilated computer image of the geographical zone by determining a relative position of the geographical coordinates and the pixel data representative of the geographical zone.[47]  (5) a programed microprocessor in the first portable device determines the occurrence of an event (exception) related to a status of the portable device in relation to the geographical zone.[48]   (6) the event (exception) occurrence allows the transmission of an event message indicating the occurrence of the event to a second portable device (second PDA).[49]  Thus, the claims include "additional features" that ensure the claims are "more than a drafting effort designed to monopolize the [wireless device tracking,]" and thus are patent eligible, for at least including the additional part beyond the Focus that a pixilated image is created upon the occurrence of an event and transmitted to another device.

27.    The '927 Patent is referred to herein as the "Patent-in-Suit."

28.    Plaintiff WirelessWerx is the owner of the entire right, title, and interest in and to the Patent-in-Suit. The Patent-in-Suit is presumed valid under 35 U.S.C. § 282.

## PATENT INFRINGEMENT OF THE '927 PATENT

---

[44] Doc. 1-1 at 31:52-53.
[45] Doc. 1-1 at 31:54-59.
[46] Doc. 1-1 at 31:60-64.
[47] Doc. No. 1-1 at 31:65-32:3.
[48] Doc. No. 1-1 at 32:4-8.
[49] Doc. No. 1-1 at 32:9-11.

29.    Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

30.    Defendant has, under 35 U.S.C. §271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more of claims 1-16, including without limitation at least claim 2 of the '927 Patent, by making, using, testing, selling, offering for sale and/or importing into the United States Defendant's Accused Products.

31.    On information and belief, Defendant has made no attempt to design around the claims of the '927 Patent.

32.    On information and belief, Defendant did not have a reasonable basis for believing that the claims of the '927 Patent were invalid.

33.    On information and belief, Defendant's Accused Products are available to businesses and individuals throughout the United States and in the State of Texas, including in this District.

34.    WirelessWerx has been damaged as the result of Defendant's infringement.

35.    The claim chart attached hereto as **Exhibit B** describes how the elements of an exemplary claim 2 from the '927 Patent are infringed by the Accused Products. This provides details regarding only one example of Defendant's infringement, and only as to a single patent claim.  Plaintiff reserves its right to amend and fully provide its infringement arguments and evidence thereof until its Preliminary and Final Infringement Contentions are later produced according to the court's scheduling order in this case.

36.    Defendant has and continues to induce infringement from at least the filing date of the lawsuit. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services

14

and related services that provide question and answer services across the Internet such as to cause infringement of one or more claims of the '927 patent, literally or under the doctrine of equivalents. Defendant, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent. Moreover, Defendant has known of the '927 patent and the technology underlying it from at least the filing date of the lawsuit.[50]   For clarity, direct infringement is previously alleged in this complaint.

37.    Defendant has and continues to contributorily infringe from at least the filing date of the lawsuit. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services and related services that provide question and answer services across the Internet such as to cause infringement of one or more claims of the '927 patent, literally or under the doctrine of equivalents.  Defendant, from at least the filing date of the lawsuit, has continued to encourage and instruct others on how to use the products showing specific intent.  Further, there are no substantial non-infringing uses for Defendant's products and services.  Moreover, Defendant has known of the '927 patent and the technology underlying it from at least the filing date of the lawsuit.  For clarity, direct infringement is previously alleged in this complaint.

38.    Defendant has caused and will continue to cause Plaintiff damage by direct and indirect infringement of (including inducing infringement of) the claims of the '927 patent.

**CONDITIONS PRECEDENT**

39.    Plaintiff has never sold a product.   Upon information and belief, Plaintiff predecessor-in-interest has never sold a product.  Plaintiff is a non-practicing entity, with no

---

[50] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

40. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with Section 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method claims and thereby remove any requirement for marking.

41. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the Patents-in-suit and that Plaintiff has substantially complied with the marking statute. Defendant has failed to identify any alleged patented article for which Section 287(a) would apply. Further, Defendant has failed to allege any defendant entity produce a patented article.

42. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus not require marking. All settlement licenses were to end litigation

16

and thus the policies of §287 are not violated.  Such a result is further warranted by 35 U.S.C. §286 which allows for the recovery of damages for six years prior to the filing of the complaint.

43.    For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

44.    Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing.  Thus, each prior settlement license reflected a desire to end litigation and as such the policies of §287 are not violated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WirelessWerx respectfully requests the following relief:

A.    A judgment that Defendant has directly infringed either literally and/or under the doctrine of equivalents and continue to directly infringe the Patent-in-Suit;

B.    A judgment that Defendant has indirectly infringed either literally and/or under the doctrine of equivalents and continue to indirectly infringe the Patent-in-Suit from at least the filing date of the lawsuit or from the date of actual; knowledge of the Patent-in-Suit;

C.      A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including past damages based on, *inter alia*, any necessary compliance with 35 U.S.C. §287;

D.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

E.      A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

F.      A judgment and order awarding Plaintiff costs associated with bringing this action;

G.      Such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Pursuant to FED. R. CIV. P. 38, Plaintiff WirelessWerx hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Ramey LLP**

By: *__/s/ William P. Ramey, III__*
     William P. Ramey, III
     Texas Bar No. 24027643
     5020 Montrose Blvd., Suite 800
     Houston, Texas 77006
     (713) 426-3923 (telephone)
     (832) 900-4941 (fax)
     wramey@rameyfirm.com

***Attorneys for WirelessWerx IP, LLC***